```
                              FILED

                              2001 JUL 10 P 1:52

                              CLERK, US DIST. COURT
                              EASTERN DIST. OF CALIF

                              BY_____
                                        DEPUTY
```

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO MORALES, ) | No. CV-F-01-5782 REC |
| ) | (No. CR-F-96-5269 REC) |
| ) | |
| ) | ORDER DENYING MOTION TO |
| Petitioner, ) | VACATE, SET ASIDE OR CORRECT |
| ) | SENTENCE PURSUANT TO 28 |
| vs. ) | U.S.C. § 2255 AND DIRECTING |
| ) | ENTRY OF JUDGMENT FOR |
| ) | RESPONDENT |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |

On June 20, 2001, petitioner Armando Morales filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  Petitioner's claims for relief are based on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

A.  <u>Background</u>.

By Indictment filed on October 10, 1996, petitioner was charged with conspiracy to distribute methamphetamine and cocaine base, distribution of cocaine base, three counts of distribution of methamphetamine, carrying a firearm during a drug trafficking offense, and three counts of felon in possession of a firearm.

1

1 Neither the Indictment nor the Superseding Indictment alleged the
2 drug quantities involved in the various offenses.  On April 21,
3 1997, petitioner pleaded guilty pursuant to a written plea
4 agreement to conspiracy to distribute methamphetamine and cocaine
5 base in violation of 21 U.S.C. §§ 841(a)(1) and 846 charged in
6 Count One of the Superseding Indictment and to being a felon in
7 possession of a firearm in violation of 18 U.S.C. § 922(g)(1)
8 charged in Count Seven of the Superseding Indictment.  Petitioner
9 stipulated to being a Career Offender within the meaning of
10 U.S.S.G. § 4B1.1 and to being an Armed Career Offender within the
11 meaning of § 4B1.4 and 18 U.S.C. § 924(e) based on the prior
12 felony convictions listed in the plea agreement.  The plea
13 agreement sets forth the potential sentence for Count One as a
14 mandatory minimum of ten years and a maximum of life.  The plea
15 agreement sets forth the potential sentence for Count Seven as a
16 mandatory minimum of fifteen years and a maximum of life.  The
17 plea agreement sets forth the factual basis of the plea as
18 follows:

> COUNTS ONE AND SEVEN: On July 31, 1996, a confidential informant went to Armando Morales' address at 1535 N. Cedar #208, Fresno, CA.  The CI and Morales drove to Morales' parents' house at 2057 S. Maple. Morales told the CI that he could supply the CI with pounds of crack, cocaine, heroin or marijuana, and could also supply the CI with firearms, including street sweepers, machineguns, pistols or rifles.  During this meeting, Armando Morales sold the confidential informant an Astra, Model A-100, .40 caliber semiautomatic pistol.  On August 2, 1996, the same confidential informant contacted Armando Morales and agreed to buy 2

ounces of crack and a gun. The CI picked up Morales at 3824 E. Hamilton and drove at Morales' direction to 2057 S. Maple, Fresno, California. Morales told the CI that the gun and crack were not available yet. For safety, CI was driving a wired car and the conversation was monitored by ATF Agent Colene Eowan. Approximately 36 minutes later, Morales called the CI and asked him to return to purchase the gun. The CI returned to 2057 S. Maple. Morales came out of the house and got into the CI's car. Morales sold the CI a Davis Industries, Model D38, .38 derringer, serial number D020601. This gun belonged to Morales' nephew, Israel Issac Esparza, according to CLETS. Morales told the CI to page him in 45 minutes to pick up the crack. Approximately 2 hours later, Morales called the CI and told him to go to the Burger King parking lot at Kings Canyon & Maple to pick up the crack. CI went to the parking lot where he received a telephone call from another person who told him to go to 464 S. Recreation. CI went to that address. Two unidentified males got into the CI's car. The CI handed $1100 to them and they gave the CI 44.49 grams (approx. 2 ounces) of crack (cocaine base). The CI's car had a wire for safety, but no video or audio tape recording was done. The buy was monitored by ATF Agent Colene Eowan, FBI Agent Ron Eowan, and FSO Det. Greg Andreotti. On August 6, 1996, the CI and Morales went to have dinner together at Baja's Mexican Restaurant in Fresno, California. The CI's car was equipped with video and sound recording devices and recorded Morales discussing selling methamphetamine and firearms. On August 7, 1996, Armando Morales sold the same confidential informant 26.42 grams of d-methamphetamine, hand to hand, for $600 at Toledo's Restaurant at Fresno & Shaw, Fresno, CA. Unfortunately, the video camera malfunctioned, but ATF Agent Colene Eowan overheard the conversation on the wire. Morales told the CI the crank was good and he would stake his reputation on it. On August 8, 1996, Armando Morales sold the same confidential informant 25.58 grams of d-methamphetamine, hand to hand, for $600. Morales was captured on videotape exiting his

|   |   |
|---|---|
| 1 | apartment at 1535 N. Cedar #208, Fresno, CA and getting into the CI's car.  This buy was |
| 2 | video taped.  They agreed to meet on August 17, 1996, so the CI could buy 2 ounces of |
| 3 | methamphetamine.  Morales gave the CI a gram of cocaine and said he had a lot of cocaine. |
| 4 | On August 17, 1996, the confidential informant met with Morales outside his |
| 5 | residence at 1535 N. Cedar #208.  Morales sold the same confidential informant approx. |
| 6 | 46.70 grams of d-methamphetamine, hand to hand, for $1200.  This buy was video taped. |
| 7 | The aforementioned firearms were manufactured outside of California, and had traveled in or |
| 8 | affecting interstate commerce.  Armando Morales was previously convicted of the |
| 9 | following felonies which were punishable by imprisonment in excess of one year: 1. |
| 10 | Robbery, committed on May 6, 1982, of clerk at 7-11 Store, Superior Court of California, |
| 11 | Fresno County, Case No. 287299-2, date of conviction of January 5, 1983; 2.  Robbery, |
| 12 | committed on June 27, 1982, of clerk at Ace's Liquor Store, Superior Court of California, |
| 13 | Fresno County, Case No. 287299-2, date of conviction of January 5, 1983; 3.  Robbery, |
| 14 | committed on May 6, 1982, of clerk at Winchell's Donut Shop, Superior Court of |
| 15 | California, Fresno County, Case No. 287299-2, date of conviction of January 5, 1983; 4. |
| 16 | Assault by Means of Force Likely to Produce Great Bodily Injury on a Custodial Officer (2 |
| 17 | Counts), committed on January 16, 1983, Superior Court of California, Fresno County, |
| 18 | Case No. 293260-6, date of conviction of May 11, 1983; and, 5.  Assault with a Firearm, |
| 19 | committed on April 4, 1993, Superior Court of California, Fresno County, Case No. 490388-6, |
| 20 | date of conviction of February 2, 1995. |
| 21 | The plea agreement further provides: "The defendant agrees to |
| 22 | waive all rights to appeal and/or collaterally attack his plea |
| 23 | and conviction; however, the defendant reserves the right to |
| 24 | appeal or collaterally attack his sentence."  The PSR calculated |
| 25 | the range of petitioner's sentence at 262 to 327 months based on |
| 26 | the quantities of cocaine base and methamphetamine admitted by |

petitioner in his change of plea and recommended a sentence of 262 months. The court sentenced petitioner on June 30, 1997 to 262 months (21.83 years) imprisonment and a 60 month term of supervised release. Petitioner did not file an appeal and has not previously filed a Section 2255 motion.

A. Timeliness of Motion.

Section 2255 has a one-year limitation period. This limitation period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner argues that this motion is not barred by the one-year limitation period because this motion was filed within one year of the date the opinion in *Apprendi* was issued by the United States Supreme Court. Some case law holds that this accrual date applies only when the Supreme Court rules that the right newly recognized by the Supreme Court is made retroactively applicable to cases on collateral review. See *United States v. Hopwood*, 122

5

F.Supp.2d 1077 (D.Neb.2000); Nodd v. United States, 2000 WL 1843835 (S.D.Ala.2000); United States v. Duran, 2000 WL 1840083 (D.Me. 2000). However, other cases, including a case from the Ninth Circuit, hold that the requirement that the Supreme Court make this determination applies only to second or successive Section 2255 motions and not to an initial motion. See United States v. Pittman, 120 F.Supp.2d 1263 (D.Or.2000), citing Jones v. Smith, 231 F.3d 1227 (9th Cir.2000).

Therefore, the court concludes that this motion is timely.

C. Effect of Plea Agreement Waiver.

As noted, petitioner specifically waived "all rights to appeal and/or collaterally attack his plea and conviction; however, the defendant reserves the right to appeal or collaterally attack his sentence." This waiver does not preclude petitioner's contention that the Indictment and Superseding Indictment did not allege an offense because of the failure to allege the specific quantities involved in Count One. See United States v. Ruelas, 106 F.3d 1416, 1418-1419 (9th Cir.), cert. denied, 520 U.S. 1282 (1997).

D. Applicability of Apprendi.

In Apprendi v. New Jersey, supra, the United States Supreme Court held in pertinent part:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule ...: '[I]t is unconstitutional for a

6

>     legislature to remove from a jury the
>     assessment of facts that increase the
>     prescribed range of penalties to which a
>     criminal defendant is exposed. It is equally
>     clear that such facts must be established by
>     proof beyond a reasonable doubt.'

530 U.S. at ___. In <u>United States v. Nordby</u>, 225 F.3d 1053 (9th Cir. 2000), the Ninth Circuit, in a case involving direct review, held that <u>Apprendi</u> applies to federal drug convictions such that any enhanced penalty based upon drug quantity under Section 841(b) must be premised upon a factual finding beyond a reasonable doubt.

Here, as noted, the indictment did not allege the quantity of methamphetamine involved in the crime. However, petitioner did not assert this error to the district court or on direct appeal, thereby raising the issue whether <u>Apprendi</u> should be applied retroactively to this motion.

In general, new constitutional rules of criminal procedure apply retroactively only to cases which are on direct state or federal appeal at the time the rule is announced. See <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987). A new rule is not to be applied retroactively on collateral review unless the new rule falls within one of two narrow exceptions: (1) the new rule places certain kinds of primary conduct beyond the power of the criminal lawmaking authority to proscribe, or (2) the new rule requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" <u>Teague v. Lane</u>, 489 U.S. 288, 305-310 (1989). Retroactivity under <u>Teague</u> is a

7

"threshold matter" which must be addressed "before considering the merits of [a] claim." Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

The Ninth Circuit has ruled that Apprendi established a new rule. Jones v. Smith, 231 F.3d 1227, 1236 (9th Cir. 2000). Therefore, the court must conduct an analysis of the Teague factors to determine if the new rule should be applied retroactively to this Section 2255 motion under the exception to nonretroactivity on collateral review because the new rule requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" Teague, supra.[1]

In Jones v. Smith, the Ninth Circuit applied Apprendi to a state petitioner's habeas claim that his conviction was unconstitutional based upon a variance between the indictment and the charge actually presented to the jury. In so holding, the Ninth Circuit held in pertinent part:

> The second exception identified in Teague requires the retroactive application of certain 'watershed rules of criminal procedure.' Teague, 489 U.S. at 312 ... Retroactive application will occur where both (1) a failure to adopt the new rule 'creates an impermissibly large risk that the innocent will be convicted,' and (2) 'the procedure at issue ... implicate[s] the fundamental fairness of the trial.' Id. In order to qualify under this exception, the new rule must do more that systematically enhance the reliability of a criminal proceeding; the rule must be an absolute prerequisite to the trial's fundamental fairness. See Carriger,

---

[1] The court does not discuss the other exception because it clearly is inapplicable.

8

948 F.2d at 598.

> In the case at bar, the <u>Apprendi</u> rule, at least as applied to the omission of certain necessary elements from the state court information, is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial. Certainly, any civilized society will grant a criminal defendant the right 'to be informed of the nature and cause of the accusation' against him. U.S. Const. amend. VI. But we need not strain our imaginations too much in order to envision a fundamentally fair trial in the aftermath of a flawed information. Indeed, the facts of the case at bar amply illustrate that the text of an information is not the only means for informing a defendant of the nature and cause of the accusation. Where the defendant has actual notice of the nature and cause of the accusation against him, as well as the possible sentences he might receive, the omission of particular key words from the written information neither increases the risk that an innocent person will be convicted nor hinders the fundamental fairness of the trial. We therefore decline to apply the <u>Apprendi</u> rule, insofar as it effects discrepancies between an information and jury instructions, retroactively to Petitioner's claim.

231 F.3d at 1237-1238. But see Hoffman v. Arave, 236 F.3d 523, 543-548 (9th Cir. 2001)(Pregerson, J., concurring), <u>petition for cert. filed</u>, May 23, 2001 (No. 00-1775).

In <u>United States v. Pittman</u>, 120 F.Supp.2d 1263 (D.Or. 2000), the district court held that <u>Apprendi</u> should not be applied retroactively to cases on collateral review in which the petitioner challenges a sentence imposed by virtue of a judicial finding of fact substantiating a statutory sentencing enhancement by a preponderance of the evidence. In so holding, the district court stated in pertinent part:

> Petitioner's claim invokes two aspects of the Apprendi decision: (1) the right to have a jury, rather than a judge, determine a fact (drug quantity) triggering higher statutory maximum penalties; and (2) the right to such a factual determination proven beyond a reasonable doubt rather than by a preponderance of the evidence. If they apply retroactively, these two 'new rules' apply with equal force to cases that arise from a conviction based upon a jury verdict; the fact that the conviction in this case is premised upon a guilty plea is of no import.
>
> . . .
>
> [T]he sole issue is whether the fact that the petitioner entered a plea not knowing that the government should have born the burden of proving drug quantity beyond a reasonable doubt constitutes the type of 'watershed' rule(s) triggering retroactive application. In Teague, the Court explained that this narrow exception should be limited to those procedures implicating 'fundamental fairness' or which are 'central to an accurate determination of innocence or guilt.' Teague, 489 U.S. at 312 ....
>
> In [United States v.] Mandanici, [205 F.3d 519 (2nd Cir.), cert. denied, 121 S.Ct. 190 (2000)], the Second Circuit noted that the Supreme Court has repeatedly 'underscored the narrowness of the second Teague exception.' 205 F.3d at 528. The Second Circuit examined eleven new rules announced by the Supreme Court and analyzed under the Teague framework and noted that in all eleven cases, the Court held that the rule at issue should not be applied retroactively. Id. ... The right to counsel is a 'watershed' rule subject to retroactive application. See id. (discussing Supreme Court's example of Gideon v. Wainwright ... as the type of rule that fits within the watershed exception); and Bell v. Hill, 190 F.3d 1089 (9th Cir. 1999)(right to counsel relative to making a motion for new trial), cert. denied, ___ U.S. ___, 120 S.Ct. 1269 ... (2000). The Ninth Circuit has held that a trial court's failure to instruct the jury as to any of the elements of the charge

10

submitted to the jury was an issue of fundamental fairness that must be applied retroactively, assuming that the rule was 'new.' Harmon v. Marshall, 69 F.3d 963 (9th Cir. 1995). The court was careful to condition its holding by expressly emphasizing twice that the case did 'not involve the failure to instruct on a single element of an offense.' Id. at 963, 967.

New rules held not to constitute watershed developments include the right of a defendant to challenge the race-based exclusion of jurors, Jones v. Gomez, 66 F.3d 199 (9th Cir. 1995), a defendant's right to inform a sentencing jury that he is ineligible for parole under certain circumstances. O'Dell, 521 U.S. at 167 ..., a defendant's right not to have a jury consider certain invalid aggravating circumstances, Lambrix v. Singletary, 520 U.S. 518, 539-40 ... (1997), or the failure to instruct a jury that it could not convict a defendant if it found a mitigating mental state. Gilmore v. Taylor, 508 U.S. 333, 345-46 ... (1993).

I find that the two new rules announced in Apprendi that: (1) a jury, rather than a judge, must determine facts supporting a statutory sentencing enhancement and (2) that this determination must be made beyond a reasonable doubt - are not the type of 'watershed' rules implicating fundamental fairness and thus, requiring retroactive application on collateral review. First, I find that the new Apprendi rules do not directly relate to the accuracy of the conviction or sentence. Like the application of Gaudin to convictions for making false statements in federal loan applications, the factual inquiry and determinations were made; they were simply made by a different factfinder. Further, the fact that the application of a different standard of review might lead to different results is insufficient. In Mackey v. U.S., 401 U.S. 667 ..., the Supreme Court expressly rejected a claim that the mere 'probability' that a different result would be reached by application of a new rule was sufficient to trigger retroactive application. ....

11

> On these principles, I agree with the Second Circuit ... that shifting an element of the offense from jury to judge and utilizing a preponderance rather than beyond a reasonable doubt standard does not implicate fundamental fairness. I further note that any other conclusion could well lead to overwhelming and disastrous results given that every court in every jurisdiction in the court has treated drug quantity as a sentencing factor for the judge to determine for well over ten years. Respect for the doctrine of finality, a critical component underlying the Supreme Court's decision in Teague, must impose some reasonable limits. Requiring retroactive application of Apprendi to every federal and state sentence imposed under such a bifurcated fact-finding system would necessitate a review of thousands of cases when actual innocence of the defendant of the charge and sentence is not in doubt.

120 F.Supp.2d at 1268-1270. See also Ware v. United States, 124 F.Supp.2d 590 (M.D.Tenn. 2000); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); West v. United States, 123 F.Supp.2d 845 (D.Md. 2000), aff'd, 246 F.3d 671 (4th Cir. 2001).

While other cases have reached a contrary result, see, e.g., United States v. Murphy, 109 F.Supp.2d 1059 (D.Minn. 2000), The court is persuaded by the rationales of Jones, Pittman, Sanders, Ware and West that the new rule of Apprendi is not applied retroactively on collateral review.

However, even if Apprendi were applied retroactively to this motion, petitioner is not entitled to relief for the reasons discussed infra.

E. Lack of Jurisdiction.

Petitioner argues that, because neither the Indictment nor the Superseding Indictment alleged the drug quantities involved

12

in Count One, this court did not have jurisdiction because an offense was not stated.

In <u>Apprendi</u>, the Supreme Court held in pertinent part:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule ...: '[I]t is unconstitutional for a legislature to remove from a jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'

526 U.S. at 252-253.

21 U.S.C. § 841(b) sets forth possible sentencing ranges, based on drug type, drug quantity, prior criminal record and other matters, for persons convicted of violating Sections 841(a) and 846. In pertinent part, a violation involving 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine results in a sentence which may not be less than 10 years or more than life. Section 841(b)(1)(A)(viii). A violation involving 5 grams or more of methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine results in a sentence which may not be less than 5 years and not more than 40 years. Section 841(b)(1)(B)(viii). Section 841(b)(1)(C) provides in pertinent part:

> In the case of a controlled substance in schedule ... II ..., except as provided in subparagraphs (A), (B), and (D), such person

13

> shall be sentenced to a term of imprisonment of not more than 20 years ....

In addition, a violation involving 50 grams or more of a mixture or substance which contains cocaine base results in a sentence which may not be less than 10 years or more than life. Section 841(b)(1)(A)(iii). A violation involving 5 grams or more of a mixture of substance which contains cocaine base results in a sentence which may not be less than 5 years nor more than 40 years. Section 841(b)(1)(B)(iii). As noted, Section 841(b) provides in pertinent part:

> In the case of a controlled substance in schedule ... II ..., except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years ....

Here, petitioner admitted under oath to the quantities involved in the offense, was advised of the applicable statutory sentencing range, and the court sentenced petitioner within the applicable statutory range based on the admitted drug quantities. Therefore, petitioner's claim that the failure of the indictment to allege the quantity of methamphetamine involved in the offense entitles him to relief is without merit. See United States v. Silva, 247 F.3d 1051, 1060 (9th Cir. 2001); United States v. Duarte, 246 F.3d 56, 62-64 (1st Cir. 2001)

Petitioner further argues that, in the absence of a finding of drug quantity beyond a reasonable doubt, his sentence under Section 841(b)(1)(A) rather than Section 841(b)(1)(C) violates

14

Apprendi.

However, as noted, petitioner admitted under oath to the drug quantity involved in the offense, was advised of the statutory range, and was sentenced within the applicable statutory range. Therefore, no violation of Apprendi occurred.

F.   Ineffective Assistance of Counsel.

Petitioner further contends that he is entitled to relief on the ground of ineffective assistance of counsel because of counsel's failure during pretrial proceedings to move to dismiss the action because neither the Indictment nor the Superseding Indictment alleged the drug quantities involved in the offenses and her failure during sentencing to argue that the maximum sentence that could be imposed was twenty years because the Indictment and Superseding Indictment failed to allege the drug quantities involved in Count One. In so arguing, petitioner recognizes that he was indicted and sentenced years before Apprendi was issued by the Supreme Court. Nonetheless, he argues, defense counsel should have anticipated Apprendi and made the arguments urged by petitioner.

In order to succeed on an ineffective assistance of counsel claim, petitioner must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688 (1984).

The court concludes that petitioner has not established the

first prong. Petitioner was indicted on October 10, 1996, pleaded guilty on April 21, 1997, and was sentenced on June 30, 1997. Apprendi was not issued by the Supreme Court until June 26, 2000. Existing Ninth Circuit precedent held that a defendant's sentence under Section 841 can be based on a judge's finding at sentencing of drug quantities under a preponderance-of-the evidence standard. This precedent was only overruled by the Ninth Circuit because of Apprendi in United States v. Norby, 225 F.3d 1083, 1059 (9th Cir. 2000). Therefore, the court concludes that counsel's failure to raise an issue that had not yet been determined by the Supreme Court and the Ninth Circuit is not conduct falling below prevailing professional norms. See United States v. Hernandez, 132 F.Supp.2d 919, 927 (N.D.Ohio 2001); see also United States v. McMullen, 98 F.3d 1155, 1157-1158 (9th Cir. 1996), cert. denied, 520 U.S. 1269 (1997). The court further concludes that petitioner has not satisfied the second prong of the Strickland test. Petitioner cannot have been prejudiced by counsel's failure to make arguments contrary to then existing Ninth Circuit precedent.

Petitioner further argues that counsel was ineffective by failing to argue at sentencing that the enhancements were the tail that wags the dog and, therefore, the enhancements should have been determined by a clear and convincing standard, citing United States v. Mezas de Jesus, 217 F.3d 638 (9th Cir. 2000).

However, petitioner's argument is based on his premise that he was facing a maximum sentence of twenty years with a guideline

16

range of 77-96 months based on <u>Apprendi</u>. As discussed above, this premise is incorrect. Therefore, petitioner's contention that the increase in his sentence to a range of 262-237 months was based on sentencing enhancements is also incorrect. As discussed above, defense counsel was not ineffective in failing to argue for the application of <u>Apprendi</u>. Furthermore, petitioner's base offense level was 32. With enhancements and adjustments to enhancements, his total offense level was 34. Therefore, it cannot be concluded that the enhancements were the tail that wags the dog of the sentence calculation. Petitioner's assertion of ineffective assistance of counsel on this ground is without merit.

ACCORDINGLY, IT IS ORDERED that petitioner Armando Morales' Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied.

JUDGMENT FOR RESPONDENT TO BE ENTERED

Dated: July 10, 2001

ROBERT E. COYLE
UNITED STATES DISTRICT JUDGE

```
                United States District Court
                          for the
                Eastern District of California
                       July 11, 2001

              * * CERTIFICATE OF SERVICE * *

                                     1:01-cv-05782

    Morales

       v.

    CR-F-96-5269 REC
```

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on July 11, 2001, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

REC

Armando Morales
57570-097
UPS GA
UPS Atlanta
601 McDonough Boulevard
Atlanta, GA   30315

Carl M Faller Jr
United States Attorney's Office
1130 O Street
Room 3654
Fresno, CA   93721


                                    Jack L. Wagner, Clerk

                                    BY: _____
                                        Deputy Clerk